25CA0063 Peo in Interest of Galindo 03-27-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0063
Pueblo County District Court No. 25MH30000
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Troy Lee Galindo,

Respondent-Appellant.

---

ORDER AFFIRMED

Division III
Opinion by JUSTICE MARTINEZ*
Dunn and Tow, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 27, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Plaintiff-Appellee

Tezak Law, Mary E. Tezak, Florence, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    Troy Lee Galindo appeals the district court's order authorizing the involuntarily administration of medications.  We affirm.

## I.    Background

¶ 2    Galindo suffers from psychosis not otherwise specified. Untreated, he exhibits symptoms that include disorganized thinking, paranoia, and agitation.  Deemed incompetent to proceed in a criminal matter, he was admitted to the Colorado Mental Health Hospital in Pueblo (CMHHIP) in late 2024.

¶ 3    After Galindo refused voluntary treatment, the Pueblo County Attorney petitioned the district court for an order authorizing the involuntary administration of risperidone (Risperdal) and, in the event of acute agitation or refusal of Risperdal, intramuscular injection of olanzapine (Zyprexa).  Consistent with *People v. Medina*, 705 P.2d 961 (Colo. 1985), the petition asserted that (1) Galindo is incapable of participating in decisions affecting his health and treatment; (2) the requested treatment is necessary to prevent a significant and likely long-term deterioration in his mental health condition or to prevent the likelihood of him causing serious harm to himself or others; (3) a less intrusive treatment alternative isn't available; and (4) Galindo's need for treatment is sufficient to

1

override any bona fide and legitimate interest he has in refusing treatment.

¶ 4     During an evidentiary hearing on the petition, the district court heard testimony from both Galindo and his supervising psychiatrist, Dr. Hareesh Pillai.  At the end of the hearing, the court found that Dr. Pillai had testified "credibly and persuasively," and adopted the opinions he expressed.  The court concluded that the People had proved all four *Medina* elements and issued an order authorizing CMHHIP staff to administer the requested medications to Galindo against his will.

## II.     Standard of Review

¶ 5     When, as here, a patient challenges the sufficiency of the evidence supporting an involuntary medication order, we review the district court's legal conclusions de novo but defer to its factual findings if they have record support.  *People v. Marquardt*, 2016 CO 4, ¶ 8.  We view the evidence as a whole and in the light most favorable to the petitioning party, leaving the resolution of testimonial conflicts and the determination of witness credibility solely to the fact finder.  *People in Interest of Uwayezuk*, 2023 COA 69, ¶ 57; *People in Interest of R.C.*, 2019 COA 99M, ¶ 7.  As the fact

finder, the district court determines the sufficiency, probative effect, and weight of the evidence, along with the inferences and conclusions to be drawn therefrom. *R.C.*, ¶ 7.

## III.   Discussion

¶ 6     A district court may order the involuntary administration of medication to a patient only if the People prove, by clear and convincing evidence, each of the four elements outlined in *Medina. Medina*, 705 P.2d at 973.  Galindo doesn't contest the second and third *Medina* elements.  He contends only that the evidence presented at the hearing was insufficient to prove the first and fourth.  We are not persuaded.

### A.   The First *Medina* Element

¶ 7     The first *Medina* element requires a court to determine whether the patient is incompetent to effectively participate in the relevant treatment decision. *Id.* A court may not order the forced medication of an involuntarily committed patient unless it is satisfied that the patient's mental illness has so impaired their judgment as to render them incapable of participating in decisions affecting their health.  *Id.*

¶ 8    Dr. Pillai offered his expert opinion that Galindo is incapable of effectively participating in decisions affecting his health, including the decision on whether psychiatric medications are neededThe district court credited Dr. Pillai's testimony, adopting the doctor's opinions as its own.  Nonetheless, Galindo asserts that Dr. Pillai's testimony was insufficient because (1) it did not "speak" to Galindo's ability to participate in treatment discussions and (2) "seem[ed] to rely heavily on the fact" that Galindo has a history of mental health certifications, which *Medina* indicates is insufficient to satisfy this element.  But Dr. Pillai's testimony that Galindo is incapable of effectively participating in decisions about whether psychiatric medications are needed does address Galindo's ability to effectively participate in treatment discussions.  In addition, Dr. Pillai testified that Galindo has only limited insight into his mental illness and has indeed denied suffering from any psychiatric illness.  Further, as the district court noted, Galindo's own testimony reflected a lack of insight into his mental illness: he denied the severity of his mental illness, instead claiming that he suffers from trauma and post-traumatic stress disorder.  Also, when asked if he suffered any of the symptoms described by Dr. Pillai — namely,

4

disorganized thinking, paranoia, and agitation — he answered, "No."

¶ 9     Under these circumstances, we cannot conclude that the evidence was insufficient to support the district court's determination that Galindo is incompetent to effectively participate in the relevant treatment decision.

## B.     The Fourth *Medina* Element

¶ 10    The fourth *Medina* element requires a court to determine whether the patient's refusal of treatment "is bona fide and legitimate." *Id.* at 974.  If so, the court must determine "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Id.*

¶ 11    The district court found (and the parties do not appear to dispute) that Galindo has experienced unwanted side effects from some of the medications he has been prescribed.  Avoiding side effects from medications is a bona fide and legitimate reason for refusing treatment.  *See id.* ("The patient's refusal may stem from a prior unfavorable experience with similar treatment . . . .").  Galindo

contends that the district court erred by finding that his prognosis without treatment is so unfavorable that his personal preference must yield to the state's interest in preserving his health and protecting his safety and safety of others in the institution. Because the record supports the court's determination, we disagree.

¶ 12    Dr. Pillai opined that the failure to medicate Galindo would be more harmful than the risks posed by the requested medications. In support of this opinion, Dr. Pillai testified that, without medication, Galindo is "easily irritable and impulsive to the point that he required an episode of seclusion and restraint and was extremely agitated towards staff members." Indeed, early on in his hospitalization, Galindo frequently required "assault precautions" because he became easily angered. Since his previous hospitalization, his presentation deteriorated and he became more threatening, which resulted in emergency medications. With medication, his psychotic symptoms improve and he is less agitated and does well.

¶ 13    Dr. Pillai also testified that, without the requested medications, Galindo posed a serious risk of harm to others. Galindo himself acknowledged that he can be aggressive toward

6

other people if he believes they are "being deceptive or . . . manipulat[ive] or controlling."

¶ 14    Dr. Pillai acknowledged that the requested medications have some potential adverse side effects. But Dr. Pillai explained that Galindo would be monitored for any side effects from the requested medication regimen, and additional medications existed to neutralize some of the side effects. Dr. Pillai also said that he did not believe Galindo could be treated with the anti-anxiety medication he preferred because it would not be effective in treating the underlying symptoms of psychosis.

¶ 15    Under these circumstances, we perceive no error in the court's determination that Galindo's prognosis without the requested medications was so unfavorable that his reasons for refusing medication must yield to the state's legitimate interests in preserving his life and health and protecting the safety of those in the institution.

IV.    Disposition

¶ 16    We affirm the order.

JUDGE DUNN and JUDGE TOW concur.